# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| JEAN VARGO and JAMES VARGO. ) ) Plaintiffs, ) ) v. ) ) SAMARIA WALKER, ) OMEGA TITLE AND ESCROW ) SERVICES, LLC, ) KYLAH CURRIE, GARMER CURRIE, ) ANTHONY SMITH, AS TRUSTEE ) OF THE MOSE & JONES FAMILY ) LIVING TRUST, and ) A&D MORTGAGE, LLC ) ) Defendants. ) ) | Case No. 2:24-cv-2795-JPM-tmp |

## ORDER GRANTING MOTION TO SET ASIDE DEFAULT

Before the Court is a Motion to Set Aside Default Judgment filed by Defendants Omega Title and Escrow Services, LLC ("Omega"), Garmer Currie, and Anthony Smith ("Smith"), as Trustee of the Mose & Jones Family Living Trust ("Family Trust") (collectively, "Default Defendants'"), filed January 6, 2025. (ECF No. 26.)[1] For the reasons set forth below, the Motion is **GRANTED**.

I.     BACKGROUND

Plaintiffs Jean and James Vargo (collectively, the "Vargos" or "Plaintiffs") filed their Complaint on October 22, 2024. (ECF No. 1.) They seek: (1) to quiet title as to an alleged

---

[1] Default Defendants titled their Motion "Motion to Set Aside Default Judgment." (ECF No. 26.) The Court, however, considers the merits of the Motion under the standard to set aside the Clerk of Court's Entries of Default, as there was no entry of default judgment in the case. (See ECF Nos. 22–24.)

fraudulent warranty deed; (2) declaratory relief; and (3) damages for slander of title, fraud, civil conspiracy, negligence, violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601 et seq, and breach of contract. (Id. ¶¶ 55–116.)

### A. Factual Background

#### i. The Property

This case stems back to a real property, a portion of which is located at 5606 Tchulahoma Road, Memphis, Tennessee (the "Tennessee Property") and a portion of which is located at 9205 Tchulahoma Road, Southhaven, Mississippi (the "Mississippi Property") (collectively, the "Property"). (ECF No. 1 ¶ 11.) The Property was owned originally by Plaintiffs. (Id.; see also ECF No. 1-2.)

In August 2023, Plaintiffs agreed to sell the Property to Defendant Samaria Walker's ("Walker's") company, Sbanos Property Management, LLC ("Sbanos") for $450,000. (ECF No. 1 ¶ 12.) Walker and Sbanos financed the Property through a mortgage in favor of Plaintiffs for $402,000. (Id. ¶ 13.) The mortgage included two deeds of trust (one for each state), corresponding warranty deeds, and a purchase money note for the $402,000 (collectively, the "Closing Documents"). (Id. ¶¶ 13–15.) The Parties agreed to refrain from recording the Deeds of Trust and Warranty Deeds until Walker could pay the $48,000 down payment. (Id. ¶ 16.) Walker took immediate possession of the Property and began making her monthly payments. (Id. ¶ 17.)

In January 2024, Walker asked Plaintiffs to revise the Closing Documents such that the Property was in her own name, not the name of Sbanos. (Id. ¶ 18.) This included revised deeds of trust, revised warranty deeds, and a revised purchase money note (collectively, the "Revised Closing Documents"). (Id.) In exchange, Walker would increase the down payment to $70,000.

(Id. ¶ 20.) Walker indicated she would record the revised deeds of trust and warranty deeds. (Id. ¶ 19.) Walker's attorney prepared the revised warranty deeds and obtained Plaintiffs' signatures. (Id. ¶ 21.) Walker's attorney sent the Tennessee revised warranty deed to Omega and Garmer Currie, but did not send it to the Shelby County, Tennessee Register of Deed's Office for recording. (Id. ¶¶ 21, 23.) Walker's attorney did send the Mississippi revised warranty deed to the Chancery Court of Desoto County, Mississippi for recording. (Id. ¶ 22.) Neither of the revised deeds of trust were recorded. (Id. ¶ 24.) Plaintiffs state they were not aware of the failure to record. (Id. ¶ 28.)

Walker subsequently paid Plaintiffs $70,000. (Id. ¶ 25.) After paying her first few monthly payments, Walker failed to make her monthly payments for August, September, and October of 2024. (Id. ¶ 26.)

    ii.    *The Alleged Fraudulent Scheme*

In July 2024, Walker asked Plaintiffs for copies of the Revised Closing Documents and told Plaintiffs she had been a victim of fraud. (Id. ¶ 28.)

Walker explained she contacted Defendant Omega to apply for a loan in January or February 2024. (Id. ¶ 29.) In March 2024, Defendant Omega prepared a closing disclosure and ALTA Settlement Statement – Seller (the "Settlement Statement")[2] for the purported sale of the Tennessee Property from Walker to Defendant Smith for $225,000. (Id. ¶¶ 30, 34.) The closing disclosure included $83,810 of "closing costs" which Plaintiff alleges are fraudulent. (Id. ¶¶ 31–32.) The Settlement Statement references a $77,000 "payoff downpayment" to a Credit

---

[2] An ALTA Settlement Statement is a standardized form developed by the American Land Title Association ("ALTA") used to itemize all fees and charges both the buyer and seller pay during the settlement process of a housing transaction. See Am. Land Title Assoc., ALTA Settlement Statements (last visited Feb. 3, 2025), https://www.alta.org/policies-and-standards/policy-forms/settlement-statements.

3

Consultant and a $4,750 assignment cost to Defendant Omega. (Id. ¶ 35.) Plaintiff avers the $77,000 was used to pay the $70,000 down payment. (Id. ¶ 36.)

Plaintiffs then found several allegedly forged documents recorded in the Shelby County Register of Deed's Office, including a revised Warranty Deed for the Tennessee Property where the date was changed from March 27, 2024 to March 26, 2024, accompanied by an affidavit included which represented the consideration for the transfer was $70,000 ("Allegedly Fraudulent Warranty Deed"). (Id. ¶¶ 40–42.) The Allegedly Fraudulent Warranty Deed was recorded on April 9, 2024. (Id. ¶ 43.)

Plaintiffs further found recorded documents—including a Warranty Deed and Deed of Trust—which purported to sell the Tennessee Property from Walker to Defendant Family Trust for $225,000. (Id. ¶¶ 45–47.) The Deed of Trust was recorded with Defendant A&D Mortgage, LLC ("A&D") as lender and Smith as trustee of Family Trust, as borrower, for a $157,500 mortgage ("A&D Mortgage"). (Id. ¶ 47.) Plaintiff also found a "Purchase and Sales Agreement" where Defendants Smith, Family Trust, and/or Omega allegedly forged Plaintiff Jean Vargo's signature for this sale. (Id. ¶ 51.)

After learning of these documents, Plaintiffs learned Walker filed a lawsuit disputing ownership of the Tennessee Property against Default Defendants in the Chancery Court of Shelby County, Tennessee. (Id. ¶ 48.) Default Defendants filed counterclaims against Walker in the state court litigation. (Id.)

4

### B. Procedural Background

Plaintiffs filed this lawsuit on October 22, 2024. (See ECF Nos. 1, 6.) Default Defendants were served on October 28, 2024. (See ECF Nos. 13–15.) Default Defendants did not file any response within 21 days of receiving the summons. See Fed. R. Civ. P. 12(a)(1)(A).[3]

On December 30, 2024, Plaintiffs moved for an Entry of Default against each Default Defendant. (ECF Nos. 19–21.) On January 2, 2025, the Clerk of Court filed the requested Entries of Default against Default Defendants. (ECF Nos. 22–24.) On January 6, 2025, Default Defendants filed the instant Motion. (ECF No. 26.) On January 20, 2025, Plaintiffs filed their Response. (ECF No. 29.) Default Defendants then filed their Reply without leave of the Court. (ECF No. 30.) After the Court ordered Default Defendants to obtain leave of Court before filing their Reply, Default Defendants moved the Court to do so. (See EF Nos. 31, 32.) The Court granted Default Defendants leave to file a Reply, (ECF No. 33), but Default Defendants never did so. Thus, the Court will not consider Default Defendants' previously filed Reply. See L.R. 7.2(c).

## II. LEGAL STANDARD

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "The factors for good cause are: (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." Courser v. Allard, 969 F.3d 604, 624 (6th Cir. 2020) (citing Burrell v. Henderson, 434 F.3d 826, 831 (6th Cir. 2006)).

"Because '[t]rials on the merits are favored in federal courts,' '[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their

---

[3] Defendants Walker and A&D timely filed their Answers. (See ECF Nos. 18 (Walker Answer, Dec. 4), 27 (A&D Answer, Jan. 13).)

5

merits.'" Id. (quoting United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 846 (6th Cir. 1983)) (alterations in original).

### III.   ANALYSIS

The Court thus considers whether to set aside Default Defendants' default in light of the three factors above.  See id.

#### A.   Whether Culpable Conduct of Default Defendants Led to the Default

Under this factor, the Court considers whether Default Defendants' default was willful. See United Coin, 705 F.2d at 845.  "Mere negligence or failure to act reasonably is not enough to sustain a default."  United States v. $22,050.00 U.S. Currency, 595 F.3d 318, 327 (6th Cir. 2010).  Rather, Default Defendants "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings."  Id. (quotation omitted).

Default Defendants argue their "failure to respond was not the result of willful neglect but [was] due to their initial inability to obtain legal counsel, which they have now secured." (ECF No. 26 at PageID 205.)

Plaintiffs argue the inability to obtain legal counsel does not constitute good cause because Default Defendants have had legal representation "both prior to and at all pertinent times to the current action."  (ECF No. 29 at PageID 227.)  This representation includes a pending state court lawsuit on the Property.  (Id.)  Plaintiffs further argue Default Defendants are culpable in causing the delay because they have had actual knowledge of the Complaint for over three months and instead of responding, chose to list the Property for sale.  (Id. at PageID 227–28.) They contend this is at least reckless disregard of the effects their conduct would have on the proceedings.  (Id. at PageID 228.)

6

The Court is persuaded Default Defendants' conduct was not intentional or in reckless disregard of the judicial proceedings. At worst, their conduct is negligent, which is not enough to sustain the Entries of Default. See $22,050.00 U.S. Currency, 595 F.3d at 327. Although Default Defendants contest this, "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." Courser, 969 F.3d at 624. Thus, this factor weighs in favor of setting aside the Entries of Default. See $22,050.00 U.S. Currency, 595 F.3d at 327.

**B. Whether Default Defendants Have a Meritorious Defense**

Under this factor, the Court examines whether Default Defendants have "state[d] a defense good at law." See United Coin, 705 F.2d at 845. If so, then they have advanced a meritorious defense. Id.

Default Defendants did not state any defenses in their Motion. (See ECF No. 26.)

Plaintiffs argue this factor weighs in favor of sustaining the Entries of Default because Default Defendants failed to raise a defense. (See ECF No. 29 at PageID 228.) They argue "[w]hen the defaulting party lacks a meritorious defense to the claims, relief from default judgment is pointless" such that "the absence of a defense is a sufficient reason to deny relief." (Id. (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.70(2)(d) (2024)).)

The Court finds this factor is neutral. While Default Defendants did not state any defenses in their Motion, Plaintiff's argument is unavailing because not stating a defense is not the same as lacking any meritorious defense. The Court therefore does not find this factor to be a "sufficient reason to deny relief." See 10 James Wm. Moore, et al., Moore's Federal Practice § 55.70(2)(d) (2024). Thus, this factor weighs neither in favor of nor against sustaining the Entries of Default. See id.

### C. Whether Plaintiffs Will Be Prejudiced

Under this factor, the Court considers whether "delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." First Tenn. Bank Nat'l Ass'n v. MJW, Inc., No. 2:19-cv-02441-SHM-tmp, 2020 WL 426497, at *2 (W.D. Tenn. Jan. 27, 2020) (quoting Dassault Systemes, SA v. Childress, 663 F.3d 832, 842 (6th Cir. 2011)). However, neither delay alone, nor increased litigation costs, generally support a finding of prejudice. Id.

Default Defendants argue "[s]etting aside the default judgment will not unduly prejudice Plaintiffs, as this case is still in its early stages, and no substantial proceedings have occurred that would impair Plaintiffs' ability to litigate their claims." (ECF No. 26 at PageID 205.)

Plaintiffs disagree. They argue any delay will cause the Property to continue to sit vacant and depreciate in value, as well as delay any payment they may obtain from the sale of the Property. (ECF No. 29 at PageID 228.)

The Court finds Default Defendants' argument persuasive. Because the case is in its early stages and discovery has not yet begun, Plaintiff will not be prejudiced by setting aside the Entries of Default. See Miles v. Shelby Cnty. Crim. Just. Ctr., No. 2:19-cv-2241-SHM-cgc, 2022 WL 584662, at *1 (W.D. Tenn. Feb. 25, 2022). Furthermore, regardless of whether the Court sustained the Entries of Default, the case would continue against the non-defaulted Defendants such that the Property would continue to "sit vacant." (See ECF Nos. 18 (Answer by Walker), 27 (Answer by A&D).) Thus, Plaintiff has not shown setting aside the Entries of Default would result in "the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." See Dassault Systemes, SA, 663 F.3d at 842. This factor therefore favors setting aside the Entries of Default. See id.

## IV. CONCLUSION

After considering the United Coin factors and the policy behind setting aside entries of default, the Court finds setting aside the Entries of Default against Default Defendants is warranted. See 705 F.2d at 846. Default Defendants' Motion is therefore **GRANTED**. The Court **SETS ASIDE** the Entries of Default. (See ECF Nos. 22–24). Default Defendants shall have up to and through **February 19, 2025,** to file their responsive pleadings.

**SO ORDERED**, this 6th day of February, 2025.

/s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT COURT JUDGE